UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CHARLES W. ADAMS,

        Petitioner,

  v.                                          Case No. 16-cv-1111-pp

BRIAN CAHAK,[1]

        Respondent.

---

**ORDER DENYING RESPONDENT'S MOTION TO DISMISS FOR FAILURE TO PROSECUTE (DKT. NO. 43), DEFERRING RULING ON RESPONDENT'S MOTION TO DISMISS FOR FAILURE TO EXHAUST (DKT. NO. 38), GRANTING PETITIONER'S FOURTH MOTION TO APPOINT COUNSEL (DKT. NO. 41) AND ORDERING FEDERAL DEFENDER SERVICES OF WISCONSIN TO APPOINT COUNSEL FOR PETITIONER**

---

On August 18, 2016, the petitioner, who is incarcerated at Oshkosh Correctional Institution and is representing himself, filed a petition for writ of *habeas corpus* under 28 U.S.C. §2254 challenging his 2012 conviction and February 28, 2013 sentencing in Winnebago County Circuit Court for capturing an image of nudity as a repeater. Dkt. No. 1.

This case has been pending far too long, in great part because of the court's delay. Although the respondent is understandably frustrated with the fact that rather than trying to represent himself, the petitioner repeatedly has

---

[1] Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts states that if a petitioner is in custody under a state-court judgment, the petition must name as the respondent the state officer who has custody of the petitioner. The court will amend the case caption to reflect that Brian Cahak is the warden of Oshkosh Correctional Institution.

1

insisted that the case can't proceed unless he is appointed counsel, the court cannot, in good conscience, dismiss the case for the petitioner's failure to prosecute it when the petitioner repeatedly has sought appointed counsel and, at one point, the court agreed that appointment would be advisable. The court will deny the respondent's second motion to dismiss, grant the petitioner's request for the court to appoint counsel and order counsel to respond to the first motion to dismiss.

**I.     Background**

On August 17, 2016, the petitioner filed his federal *habeas* petition. Dkt. No. 1. With the petition, he filed a motion asking the court to stay the case while he "exhausted all state remedies." Dkt. No. 2 at 1. The court granted that motion and stayed the case, dkt. no. 9, and subsequently instructed the petitioner to inform the court when his state court litigation was complete so that it could reopen this federal case, dkt. no. 18 at 2. On June 15, 2018, the petitioner asked this court to reopen the federal case and to appoint him counsel. Dkt. No. 23. He stated in the request for appointment of counsel that he knew that the case never would receive a full and fair hearing "until someone assigns counsel willing to present and argue the merits of this case and a court to that will issue orders allowing a hearing to take place." Id. at 4.

In the first of several delays, the court did not act promptly on the petitioner's request. It was not until two years later, on July 27, 2020, that the court granted the petitioner's motion to reopen the case but denied without prejudice the petitioner's motion to appoint counsel. Dkt. No. 29. The court

2

explained to the petitioner that a federal civil litigant (such as a *habeas* petitioner) did not have a statutory or constitutional right to court-appointed counsel, pointed out that the documents he'd filed up to that point were understandable and explained that there were not enough volunteer lawyers to represent every *habeas* petitioner who asked for one. Id. at 3-4. The court ordered that by September 25, 2020, the petitioner must file an amended petition (including the claims he'd exhausted in state court). Id. at 5.

The petitioner did not comply with the court's order—he did not file an amended petition, even though all the court had suggested was that he might want to add the claims he'd exhausted. Instead, a week after the court issued its order, it received from the petitioner a "Response + Request" referencing the court's July 27, 2020 order and again asking the court to appoint the petitioner a lawyer. Dkt. No. 30. In this document, the petitioner stated that he'd hoped to find someone to help him present the petition so that he could prove to the court that not only was he entitled to relief, but that he "simply can not do this without counsels help . . . ." Id. at 1. He said that the people who had been helping him no longer were around and that his legal paperwork was "in the hands of the Federal public Defenders office in Green Bay, WI." Id. at 1-2. He said he'd mailed the documents to the Federal Defender because when he was transferred to federal custody,[2] the U.S. Marshals would not let him take anything with him. Id. at 2. The petitioner said that he'd asked the Federal

---

[2] The petitioner did not explain to the court why he was transferred from state to federal custody; much of what the court has learned about the procedural posture of the petitioner's cases has come from its own research.

3

Defender's office to look at his paperwork and that he'd asked them or another attorney "they might know" to take over "so this amended petition [the court] mention[ed] can be done the way [the court] describe[d] in [its] order of 27 July 2020." Id. The petitioner said that he could not write for a long period due to a medical disability, that he didn't understand some of the rules, that he didn't understand everything the court was saying and that it would take him too long to respond. Id. at 3. He said, "Everyone always says I understand I only understand enough to get myself denied and not justice." Id. He insisted that without counsel he could not show the court "the[] way the want shown that because of the constitutional violation by Wisconsin Justice system I am now at this very moment entitled to have one of my state convictions vacated and transferred to Federal custody to serve my sentence there." Id. at 3. He insisted, repeatedly, that he needed a lawyer to present his arguments properly.

     Again, this court did not act promptly. About eight months later, in May 2021, the court received another letter from the petitioner requesting that the court appoint him counsel. Dkt. No. 31. This letter stated that the petitioner had received no response from any attorneys or from the Federal Defender who had his file. Id. at 1. He reiterated that he could not proceed without an attorney to properly present his claims to the court; he asserted that the lawyers he'd contacted would not take the case without money or without being appointed. Id. On July 22, 2021, the court issued an order screening the petition, construing the July 2020 and May 2021 filings as second and third

4

motions to appoint counsel and denying both without prejudice. Dkt. No. 32.
After working through the history of the petitioner's several cases (two state
convictions and one federal one), the court stated:

> . . . the petitioner has indicated that he doesn't have his legal files and that he can't get them from the Federal Defender's office. He says that whoever helped him craft his original petition and other filings is no longer around (and the court notes that he's now at a different prison). It is possible the petitioner is confused about which of his state convictions he has attacked in this petition. He appears to believe that he sent requests to this court, requests this court has no record of receiving. He appears confused about the procedure by which a federal court would rule on a *habeas* petition. The court believes that it may be appropriate to appoint counsel to represent the petitioner.

Id. at 11. The court decided, however, that before it appointed counsel, it would ask the respondent to respond to the petition; the court said that after the respondent filed a response, the court would allow the petitioner to again request appointment of counsel. Id.

On November 2, 2021, the respondent filed a motion to dismiss the petition. Dkt. No. 38. The respondent argued that the petitioner had not exhausted any of his claims before bringing them to federal court. The issues the respondent raised were issues familiar to lawyers who do *habeas* work—things like "fair presentment" and "procedural default"—but they are issues that lay persons such as the petitioner likely would find confusing. The court already had opined that, once the respondent answered the petition, the court would consider appointing counsel for the petitioner. It should have done so as soon as it received and reviewed the response. To the court's regret, it did not. Instead—apparently forgetting that it had said back in July 2021 that

5

appointment of counsel would be appropriate—on November 3, 2021, the court issued an order requiring the petitioner to respond to the respondent's motion to dismiss by the end of the day on December 17, 2021; it told the petitioner that if he did not respond by that deadline, the court would consider the respondent's motion without any input from the petitioner. Dkt. No. 40.

On November 17, 2021—two weeks after the court issued the order requiring him to respond to the motion and a month before his response was due—the petitioner filed a fourth motion for appointment of counsel. Dkt. No. 41. He stated that all his legal files remained with the Federal Defender in Green Bay. Id. at 1. He said that his carpal tunnel condition impacted his writing, and that his vision was getting "more bothersome" and that he was waiting to see a doctor. Id. at 2. He asserted that the case had reached the point where he could not handle it on his own. Id. at 3.

Yet again, the court failed to act. On November 8, 2024—in the absence of any action by this court in the three years since the petitioner filed his fourth motion for appointment of counsel—the respondent filed a second motion to dismiss, alleging that the petitioner had not prosecuted his case. Dkt. Nos. 43, 44. The respondent argued that in its most recent order, the court had directed the petitioner to respond to the original motion to dismiss by December 17, 2021 but that the petitioner had failed to do so. Dkt. No. 44 at 2. The respondent opined that it "appears [the petitioner] no longer wishes to prosecute the case" and argued that dismissal for failing to respond to a

6

dispositive motion is proper. Id. (citing Smith v. Frank, Case No. 05-CV-0426, 2007 WL 2455445, at *1 (E.D. Wis. Aug. 24, 2007)).

In response, the petitioner sent a letter to the court reiterating his request for counsel and objecting that he does not understand the proceedings and applicable law. Dkt. No. 45 at 1. He states that he "[doesn't] know what [] can be done without [a] lawyer." Id.

## II. Analysis

There is no excuse for the court's multiple delays in ruling on the motions the parties have filed. The court's delays have needlessly prolonged this case and have caused both parties to file unnecessary documents.

The court also regrets that it did not recall that it had told the petitioner that appointment of counsel would be appropriate after the respondent had responded to the petition. Had the court simply appointed counsel at that time, this case would either be resolved or on the road to resolution.

As the court has said, it understands the respondent's frustration. The court *has* ordered the petitioner to take action—to file an amended complaint, for example. Rather than try, the petitioner simply repeats that he needs a lawyer. In some senses, the petitioner has refused to follow the court's orders and has refused to make his best efforts to litigate his case. But given the extent to which the delays in this case were caused by *the court*, and given the genuine confusion the petitioner has demonstrated in documents he filed after he lost the help of other incarcerated persons, it would be patently unfair for the court to dismiss the petition for failure to prosecute.

7

The court will deny as unnecessary the respondent's second motion to dismiss. Dkt. No. 43. The court will grant the petitioner's most recent motion to appoint counsel, dkt. no. 41, and will order Federal Defender Services to appoint a lawyer to prepare a response to the respondent's first motion to dismiss, dkt. no. 38.

**III. Conclusion**

The court **DIRECTS** the Clerk of Court to update the docket to reflect that Warden Brian Cahak is the correct respondent.

The court **DENIES AS UNNECESSARY** the respondent's motion to dismiss for failure to prosecute. Dkt. No. 43.

The court **GRANTS** the petitioner's fourth motion to appoint counsel. Dkt. No. 41.

The court **DEFERS RULING ON** the respondent's motion to dismiss for failure to exhaust. Dkt. No. 38.

Under 18 U.S.C. §3006A(a)(2)(B), the court **ORDERS** that Federal Defender Services of Wisconsin is **APPOINTED** to represent the petitioner in responding to the respondent's November 2, 2021 motion to dismiss (Dkt. No. 38).

The court **ORDERS** that within thirty (30) days of the date counsel is appointed, counsel must file a notice with the court, advising the court of how much time counsel needs to be able to confer with the petitioner and prepare a response to the respondent's November 2, 2021 motion to dismiss. Once the court receives that notice, it will set a schedule for the petitioner to file a brief

8

in opposition to the motion to dismiss (or some other response) and, if necessary, for the respondent to file a reply.

Dated in Milwaukee, Wisconsin this 27th day of November, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**